# In the United States Court of Federal Claims

No. 19-1816C

(Filed:  October 19, 2020)

| | |
|---|---|
| **CARL L. GULLEY,** | RCFC 12(b)(1); RCFC 12(b)(6); RCFC 12(h)(3); RCFC 10(a); RCFC 41(b); mootness; failure to prosecute; Tucker Act claims; illegal exaction claims; money-mandating claims; takings claims; federal education loan discharge. |
| *Plaintiff,* | |
| **v.** | |
| **THE UNITED STATES,** | |
| *Defendant.* | |

*Carl L. Gulley*, Little Rock, AR, *pro se*.

*Russel J. Upton*, United States Department of Justice, Civil Division, Washington, DC, for defendant.  With him on the briefs were *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Tara Hogan*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

## OPINION AND ORDER

**SOLOMSON, Judge.**

On November 19, 2019, Plaintiff, Mr. Carl L. Gulley, proceeding *pro se*, filed a Complaint with this Court.  ECF No. 1 ("Compl.").  The Complaint alleges primarily that "the U.S. Department of the Treasury, and the U.S. Department of Education ['DOE'], intentionally or willfully deprived [Mr. Gulley] of part of his Social Security Disability Income ('SSDI')" and improperly used it to pay for Mr. Gulley's overdue, government student loans.  *Id.* at 4.

On January 17, 2020, the Court granted the government's motion for extension of time to file its answer.  ECF No. 10.  On February 19, 2020, the Court granted Mr. Gulley's motion for leave to file an amended complaint, ordering that it be filed on or before March 9, 2020.  ECF No. 11.  The Court subsequently extended the time for Mr. Gulley to file his amended complaint, to and including March 25, 2020.  ECF No. 12. The Court further instructed the government to file its answer to the *original* Complaint if Mr. Gulley failed to file his amended complaint in a timely manner "and [that] no

further leave to amend the complaint [would] be granted absent good cause shown." *Id.* Mr. Gulley never filed an amended complaint.

On May 11, 2020, the government filed its motion to dismiss Mr. Gulley's original Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). ECF No. 14 ("Def. Mot."). Mr. Gulley, however, never filed a response to the government's motion. *Id.* at 3 n.1. For the reasons explained below, the government's motion to dismiss Mr. Gulley's Complaint hereby is **GRANTED** and Mr. Gulley's Complaint is **DISMISSED**.

## I.    FACTUAL BACKGROUND

In March 2016, Mr. Gulley received two Federal Direct Student Loans totaling $6,333.00, to attend Diesel Driving Academy. ECF No. 1-2 ("Compl. Exh.") at 3; *see* Def. Mot. at 2. When Mr. Gulley failed to repay his student loans in a timely manner, his loans were declared in default. Def. Mot. at 2. Thereafter, Mr. Gulley's DOE student loan servicer, Nelnet, transferred his account to DOE's Default Resolution Group ("DRG"). Compl. Exh. at 3. On April 15, 2019, Mr. Gulley's loans first appeared in DOE's Debt Management Collection System database for possible collection. *Id.*

On April 18, 2019, DOE informed Mr. Gulley that, if his outstanding student loans were not repaid within 65 days, his debt would be referred to the U.S. Department of the Treasury's ("Treasury") Bureau of the Fiscal Service, Debt Management Services, for offset of his SSDI payments. Compl. Exh. at 4. DOE informed Mr. Gulley that as long as any offset did not reduce his SSDI payments below $750.00 per month, Treasury could offset Mr. Gulley's debt by taking up to 15% of his SSDI payments, pursuant to 31 U.S.C. § 3716(c)(3)(A). Compl. Exh. at 4. Even after DOE sent Mr. Gulley the April 18, 2019 notice, Mr. Gulley still did not repay his outstanding student loan debt, and DOE thus referred Mr. Gulley's account to Treasury for offset. *Id.*

On August 2, 2019, Treasury notified Mr. Gulley that funds would be withheld from his SSDI payments beginning in October 2019. Compl. Exh. at 1. Shortly thereafter, on August 16, 2019, Mr. Gulley sent Treasury a letter in which he argued that "he, 'Carl L. Gulley,' and the corporate entity, 'CARL L. GULLEY,' are not the same, that only the corporate entity is responsible for his student loan debt, that the debt should be discharged, and that the SSDI payment offsets should stop." Def. Mot. at 3; *see* Compl. Exh. at 2. On September 20, 2019, Treasury sent Mr. Gulley a written response, explaining why Treasury could collect the debt from him, personally. Compl. Exh. at 5. Following that, beginning in October 2019 and ending in January 2020, Treasury offset Mr. Gulley's SSDI payments on four occasions. *See* Def. Mot. at 50.

Mr. Gulley's Complaint requests various forms of relief, which the Court identifies and references throughout this opinion, for ease of reference, as specific "Counts." Compl. at 7-8 ("Relief Sought"). First, Mr. Gulley requests that this Court find that "plaintiff Carl L. Gulley, and corporate entity CARL L. GULLEY, are single, separate beings or individuals," *Id.* at 7-8, and thus hold that any student loan debt is "indebted to the corporate entity . . . and not to [Mr. Gulley.]" *Id.* at 8 (Counts 1–3). Second, Mr. Gulley seeks monetary damages for what he characterizes as a "taking" of parts of his SSDI payments. *Id.* at 6, 8 (Count 4). Third, Mr. Gulley claims that the defendants have committed various due process and civil rights violations. *Id.* (Counts 5 & 7). Fourth, Mr. Gulley seeks an injunction to stop the offsets of his SSDI payments. *Id.* (Count 6). Finally, Mr. Gulley asks that this Court award him punitive damages in the amount of $3,000,000.00. *Id.* at 8-9 (Count 7).

Before Mr. Gulley even filed his Complaint, however, President Trump signed an executive order that adopted a "process . . . to facilitate the swift and effective discharge of the Federal student loan debt of totally and permanently disabled [('TPD')] veterans." Discharging the Federal Student Loan Debt of Totally and Permanently Disabled Veterans, 84 Fed. Reg. 44,677 (Aug. 21, 2019) ("the Executive Order"). On November 26, 2019, DOE updated its regulations consistent with the Executive Order. *See Total and Permanent Disability Discharge of Loans Under Title IV of the Higher Education Act*, 84 Fed. Reg. 65000, 65005 (Nov. 26, 2019) (codified at 34 C.F.R. §§ 674.61, 682.402, 685.213) ("As a result of this automated process . . . there will no longer be a need for, nor will the Department have the discretion to require, a separate application from identified borrowers.").

Thus, as the government represents in its motion, "prior to Mr. Gulley filing his complaint in this Court, efforts already were underway to determine whether numerous veterans (including Mr. Gulley) were eligible for TPD discharges of their Federal student loans." Def. Mot. at 4. On January 12, 2020, the Department of Veterans Affairs ("VA") provided DOE with the necessary documentation so that the latter could determine whether Mr. Gulley was eligible for a TPD discharge of his Federal student loans. Def. Mot. at 52-54. The next day, on January 13, 2020, DOE notified Mr. Gulley that, in fact, he was eligible for a TPD discharge of his Federal student loans. Def. Mot. at 47-49. In its notice, DOE informed Mr. Gulley that:

> [T]he [] balance of your loans *will be forgiven*. In addition, *all payments* on your loans received after 10/31/2008, including payments collected through wage garnishment or Treasury offset, *will be refunded*. . . . **We will automatically discharge your federal student loans** . . . unless you tell us that you do not want to have your loans discharged.

*Id.* at 47 (emphasis added). DOE's notice thus made clear that, unless Mr. Gulley notified DOE otherwise, DOE would discharge Mr. Gulley's loans on March 14, 2020. *Id.*

Mr. Gulley never notified DOE that it should not discharge his loans. DOE accordingly discharged all of Mr. Gulley's outstanding Federal student loans on March 14, 2020. Def. Mot. at 56-57. Treasury thereafter processed refunds for the offsets of Mr. Gulley's SSDI payments, Def. Mot. at 59, and issued four separate refund checks (Def. Mot. at 60-67), for a total refund of $544.05. Def. Mot. at 50. The government included with its Motion to Dismiss copies of checks that Mr. Gulley apparently received, "endorsed [], and deposited[] on April 3, 2020[] into his [personal] bank account." Def. Mot. at 5; *see id.* at 59-67. Thus, "all of the offsets of Mr. Gulley's SSDI payments have been refunded and his student loan debt fully discharged." *Id.*

## II.     THE JURISDICTION OF THE U.S. COURT OF FEDERAL CLAIMS

This Court has a duty to ensure that it has jurisdiction over any claim presented before it. *See, e.g., St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992-93 (Fed. Cir. 2019); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). As a threshold matter, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Accordingly, "except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction in the Court of [Federal] Claims more than in any other court to entertain suits against the United States.'" *United States v. Testan*, 424 U.S. 392, 400 (1976) (quoting *United States v. Herwood*, 312 U.S. 584, 587-588 (1941)). Generally, "the jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009). In pertinent part, the Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

Thus, the Tucker Act vests this Court with jurisdiction and waives the sovereign immunity of the United States "[f]or actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions[.]" *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004). The Tucker Act, however, "does not create a substantive cause of action[.]" *Fisher v.*

*United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).  Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act."  *United States v. Mitchell*, 463 U.S. 206, 216 (1983).

Courts treat a *pro se* plaintiff's pleadings with less scrutiny and give them a more liberal construction than pleadings prepared by counsel.  *See Castro v. United States*, 540 U.S. 375, 381 (2003).  "[E]ven *pro se* plaintiffs," however, "must persuade the court that [its] jurisdictional requirements have been met[.]"  *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019) (citing *Bernard v. United States*, 59 Fed. Cl. 497, 499 (2004), *aff'd*, 98 F. App'x 860 (Fed. Cir. 2004)).

### III.    MR. GULLEY'S COMPLAINT MUST BE DISMISSED

Taking into consideration Mr. Gulley's *pro se* status by broadly construing his arguments, and even assuming that all of his plausible *factual* allegations are true, as the Court must at this stage,[1] this Court nevertheless holds that all of Mr. Gulley's claims either fall outside of this Court's jurisdiction or fail to state a claim upon which relief can be granted as a matter of law.  In either case, Mr. Gulley's claims must be dismissed.

---

[1] The government's motion to dismiss challenges the factual basis for the Court's subject-matter jurisdiction (*i.e.*, in arguing that Mr. Gulley's claims have been rendered moot by the Executive Order and as a result of his funds having been refunded to him).  Accordingly, for the purposes of resolving that motion, "the allegations in the complaint are not controlling."  *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 277–79 (1936)).  Rather, the Court has accepted as true "only uncontroverted factual allegations" and has made factual findings regarding the "controverted jurisdictional allegations."  *Id.* at 1583–84.  The government also moves to dismiss the Complaint for failure to state a claim.  For the purposes of resolving that motion, this Court assumes, as it must, that the *factual* allegations – but not legal conclusions – contained in Mr. Gulley's Complaint are true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court also has considered "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record[]" – particularly the Exhibits which the government attached to its motion to dismiss – which the Court properly may consider without converting the motion to dismiss into a motion for summary judgment.  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).  Nonetheless, the Court has derived the above factual background section from the allegations contained in Mr. Gulley's Complaint.

## A.  Mr. Gulley's Complaint Is Subject to Dismissal For Failure To Prosecute

Before addressing the government's pending motion to dismiss, the Court notes that Mr. Gulley never filed an opposition to that motion.  As such, this Court would be justified in dismissing Mr. Gulley's Complaint for failure to prosecute.  RCFC 41(b) ("If the plaintiff fails to prosecute . . . the court may dismiss on its own motion[.]"); *see Cerf v. United States*, 621 F. App'x 651, 652 (Fed. Cir. 2015) ( "[Plaintiff] failed to file an opposition to the government's motion to dismiss by the trial court's . . . deadline.  Accordingly,  . . .  the court dismissed [plaintiff's] complaint for failure to prosecute.").

In some cases, this Court's dismissal for failure to prosecute pursuant to RCFC 41(b) is triggered by a government motion.  *See, e.g., Coakley & Williams Constr., Inc. v. United States*, 2012 WL 2866291, at *1 (Fed. Cl. July 13, 2012) (dismissing case pursuant to RCFC 41(b) where the government sought "dismissal of plaintiff's complaint with prejudice for failure to prosecute").  In other cases, this Court has first ordered the plaintiff to show cause for failing to respond to the government's motion *before* dismissing for failure to prosecute.  *E.g., Reaves v. United States*, 2005 WL 6112619, at *1 (Fed. Cl. Aug. 5, 2005) ("Defendant filed a motion to dismiss, which Plaintiff failed to timely oppose. . . .[Then], the Court entered an Order to Show Cause directing Plaintiff to demonstrate why the Court should not dismiss his complaint for failure to prosecute.").

Here, the government did not move to dismiss Mr. Gulley's Complaint for failure to prosecute, and this Court did not issue a show cause order, directing Mr. Gulley to respond to the government's motion to dismiss.  Accordingly, although Mr. Gulley "did not timely respond to the government's motion to dismiss this case" – which warrants dismissal in its own right – the Court concludes *infra* that "even if [Plaintiff] had responded, the case still would have been dismissed[,]" either for lack of jurisdiction, or on the merits for failure to state a claim.  *Thomas-Bey v. United States*, 2018 WL 415684, at *1 (Fed. Cl. Jan. 11, 2018).

## B.  Mr. Gulley's Complaint Improperly Identifies Individual Defendants

Mr. Gulley's Complaint does not comply with this Court's rules.  Pursuant to RCFC 10(a), "the United States [must be] designated as the party defendant."  This means not only that the United States must be included as a party defendant, but also that it must be the *sole* defendant named in a plaintiff's complaint.  *Kemp v. United States*, 124 Fed. Cl. 387, 392-93 (2015) ("The *only* proper defendant for any matter before this court is the United States, not its officers, nor any other individual." (emphasis added)).  Mr. Gulley's Complaint included as defendants a list of other government agencies and officials, including two Executive Branch cabinet members.  Compl. at 1-2.  Such individuals, however, are not proper defendants in this Court, regardless of any potential connection between those officials and the claims at issue.  *See* RCFC 10(a).

Failure to follow this Court's Rules may, in some instances, independently warrant dismissal of an action. *See* RCFC 41(b) (providing for *sua sponte* dismissal "[i]f the plaintiff fails . . . to comply with these rules"); *Whiting v. United States*, 99 Fed. Cl. 13, 17 (2011) (citing *Kadin Corp. v. United States*, 782 F.2d 175, 176–77 (Fed. Cir. 1986), for the proposition that although "dismissal of a claim is a harsh action, especially to a *pro se* litigant, it is justified when a party fails to pursue litigation diligently and disregards the court's rules").

Although the Court does not rely upon RCFC 10(a) here to dismiss Mr. Gulley's Complaint in its entirety, his claims against individual government officials and specific agencies must be dismissed pursuant to RCFC 12(b)(1) and 12(h)(3). Claims against individuals – even in their official capacity as government officials – fall outside of this Court's jurisdiction, as this Court only possesses jurisdiction to decide suits against the United States. *See Sherwood*, 312 U.S. at 588 ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."). To the extent Mr. Gulley's Complaint includes claims seeking relief against individual defendants, the Court lacks jurisdiction over such claims, which hereby are **DISMISSED** pursuant to RCFC 12(b)(1) and 12(h)(3).

### C. Mr. Gulley's Primary Claims Are Moot Because His Student Loan Debt Has Been Discharged And Any Offsets Have Been Refunded

The government, in its motion, argues that, even if Mr. Gulley's allegations could support a takings claim or an illegal exaction claim, this case is moot and should be dismissed. Def. Mot. at 8. In particular, because of regulatory and policy changes arising from the Executive Order regarding student loan debt, all of Mr. Gulley's loan debt has been discharged, and any previous garnishment of his SSDI payments have been refunded. *Id.* As such, the government contends that there is no justiciable case or controversy before this Court. *Id.* Additionally, because the Executive Order discharged Mr. Gulley's loan debts entirely, the government maintains that there is no risk of future garnishment that this Court might remedy through any other relief. *Id.*

Indeed, as of today, all of Mr. Gulley's student loan debt apparently has been discharged, any offsets have been halted, and all of Mr. Gulley's previous SSDI payment offsets have been refunded. Def. Mot. (ECF No. 14) at 56-57. Accordingly, the government is correct: Mr. Gulley's claims are moot, and his Complaint should be dismissed for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) ("[M]ootness . . . is a threshold jurisdictional issue."); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 328 (2012) ("[M]ootness of a case is properly the subject of an RCFC 12(b)(1) motion.").

Federal courts lack the power to decide questions that cannot affect the rights of litigants in the case before them. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974); *see Monk v. Shulkin*, 855 F.3d 1312, 1316 (Fed. Cir. 2017). This doctrine, commonly referred to as "mootness," derives from the Constitutional requirement that Federal courts may only exercise judicial power when a "case or controversy" exists. U.S. Const., art. III, sec. 2, cl. 1. Thus, if a decision on the merits of the case is incapable of "affect[ing] the rights of the litigants in the case before" a federal court, there is no justiciable case or controversy. *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 (1964).

This Court applies Article III case or controversy requirements. *See Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) ("'The Court of Federal Claims, though an Article I court . . . applies the same standing requirements enforced by other federal courts created under Article III.'" (quoting *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003))); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1562 (Fed. Cir. 1990).

Particularly, this Court has held that:

> The better view is not that [mootness] is a matter of prudence, but rather that a 'case or controversy,' 28 U.S.C. §§ 2517, 2519, which Congress has placed under the jurisdiction of both our Court and the Federal Circuit, must necessarily meet the Article III justiciability requirements. . . .It may be a matter of choice, but the choice was made by Congress, not our Court[.]

*Tech. Innovations, Inc. v. United States*, 93 Fed. Cl. 276, 278 (2010) (citations omitted); *see Tender Years Learning Corp. v. United States*, 128 Fed. Cl. 265, 270 (2016) ("Although mootness is part of the 'case or controversy' requirement in Article III of the United States Constitution . . . the doctrine also applies in this Article I Court."); *see also Indus. for the Blind, Inc. v. United States*, 120 Fed. Cl. 132, 135 (2015); *Brookfield Relocation Inc. v. United States*, 113 Fed. Cl. 74, 77 (2013).

In defining the contours of this doctrine, the Federal Circuit has held that "[t]he party asserting mootness bears the burden of demonstrating that (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019) (quotations omitted). "'Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1329 (Fed. Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). In the present case, both of these requirements have been met.

First, the Executive Order and the government's implementation of that order has eliminated the alleged harm regarding which Mr. Gulley complains.  In addition to DOE's having discharged Mr. Gulley's loans, the Treasury also has refunded previously garnished SSDI payments.  Def. Mot. at 60-67.  In that regard, the government's reliance on *Robinson v. United States*, 2017 WL 1808117 (Fed. Cl. May 5, 2017), is well-placed.  In *Robinson*, which also involved a plaintiff challenging the garnishment of SSDI payments, this Court held that because the plaintiff "ha[d] obtained all other relief she sought, her complaint [was] moot."  *Id.* at *1.  Here too, the government repaid the funds previously garnished from Mr. Gulley and thus has mooted any alleged injury. Moreover, the fact that a live case or controversy *was* present when Mr. Gulley filed his Complaint is immaterial, as "to avoid dismissal for mootness, an actual controversy must remain at all stages, not merely at the time the complaint is filed."  *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed Cir. 2008) (citing *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974)); *see Tech. Innovations*, 93 Fed. Cl. at 278 ( "mootness is an exception to 'the long-standing rule in the Federal courts that jurisdiction is determined at the time the suit is filed and, after vesting, cannot be ousted by subsequent events, including action by the parties[]'" (quoting *F. Alderete Gen. Contractors, Inc. v. United States*, 715 F.2d 1476, 1480 (Fed. Cir. 1983))).

Second, even assuming the government improperly garnished or otherwise took Mr. Gulley's SSDI payments, there is no reasonable expectation that the taking or garnishment will occur again.  This is because, once a loan has been discharged, the lender can no longer assert rights to the previously due funds.  *See Discharge*, Black's Law Dictionary (11th ed. 2019) (defining the term "discharge" to mean "[a]ny method by which a legal duty is extinguished; esp., the payment of a debt or satisfaction of some other obligation[]"); *cf. Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, (2004) ("The discharge order releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt"); *Helman v. Bank of Am.*, 685 F. App'x 723, 728 (11th Cir. 2017) ("The discharge also protects you from any efforts by anyone to collect this discharged debt as a personal liability of the debtor.").  Because the Executive Order discharged Mr. Gulley's loans, he no longer owes the sums at issue to the government.  As such, even if the Executive Order were rescinded, the government would be unable to garnish Mr. Gulley's SSDI payments in the future.  At least one other federal court has reached this same conclusion.  *See Bourg v. Dept. of Treasury Financial Management Service, Inc.*, 2009 WL 890666, at *1 (E.D. La. Mar. 31, 2009) (holding that because the "offset against [plaintiff's] disability payment was reversed upon the Government's receipt of his discharge application, collection actions have been suspended, and . . . [plaintiff] has been granted a total and permanent discharge of his student loans[,] . . . there is no basis for the Court to conclude that [plaintiff's] disability benefits risk a future offset relative to his now discharged student loans[]").

Because Mr. Gulley's loan debt has been entirely discharged and all previous garnishments of his SSDI payments have been fully refunded, the government's implementation of the Executive Order (and the subsequent actions of DOE and Treasury) have remedied Mr. Gulley's alleged injury.  Accordingly, whether Mr. Gulley's Complaint is understood as asserting a takings claim, an illegal exaction claim, or any other kind of claim for funds withheld, such allegations are moot, and the Complaint hereby is **DISMISSED** pursuant to RCFC 12(b)(1).

### D.  Even If Mr. Gulley's Case Were Not Moot, The Court Does Not Possess Subject-Matter Jurisdiction Over Counts 1–3 And Counts 5–7 of Mr. Gulley's Complaint

At the outset, the Court notes that "[i]n Tucker Act jurisprudence, [the] neat division between jurisdiction and merits has not proved to be so neat[,] [as] [i]n these cases, involving suits against the United States for money damages, the question of the court's jurisdictional grant blends with the merits of the claim[] [and] [t]his mixture has been a source of confusion for litigants and a struggle for courts."  *Fisher*, 402 F.3d at 1171–72; *see Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) ("Courts frequently confuse or conflate the distinction between subject matter jurisdiction and the essential elements of a claim for relief.").  The undersigned highlighted this difficulty in a recent decision.  *See Perry v. United States*, 149 Fed. Cl. 1, 10-11 (2020).  Thus, the Court reiterates that, in reviewing a plaintiff's complaint, our jurisdictional determination is not governed by the plaintiff's characterization of its claims and "[t]hreadbare recitals of [claim] elements . . ., supported by mere conclusory statements" do not suffice.  *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354-55 (Fed. Cir. 2018).  With that in mind, the Court holds that the bulk of Mr. Gulley's claims fall outside of this Court's subject-matter jurisdiction in at least four respects.

First, as noted, for a statutory or constitutional provision to serve as the basis for a claim within this Court's jurisdiction, the provision must either be money-mandating or support a claim for an illegal exaction.  *See Testan*, 424 U.S. at 398; *Contreras v. United States*, 64 Fed. Cl. 583, 588 (2005).  With respect to "money-mandating" claims, in particular,[2] a statute — or other provision of law — creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."  *Mitchell*, 463 U.S. at 217 (quoting *Testan*, 424 U.S. at 400) (internal quotation marks omitted); *see also Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327 (2020).  With the exception of Mr. Gulley's takings claim pursuant to the Fifth Amendment (which the Court addresses *infra*), none of the other statutory provisions that Mr. Gulley cites in his Complaint bring his claims within this Court's jurisdiction.

---

[2] The Court separately addresses whether Mr. Gulley has sufficiently pleaded a claim for an illegal exaction, *see infra* Part III.D.

In particular, the due process clause of the U.S. Constitution and 42 U.S.C. § 1983 (both of which Mr. Gulley cites in his Complaint) are not money mandating sources of law. *Harris v. United States*, 868 F.3d 1376, 1381 (Fed. Cir. 2017) (quoting *In re United States*, 463 F.3d 1328, 1335 n.5 (Fed. Cir. 2006), for the proposition that "'because the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act[]'");[3] *Ramirez v. United States*, 239 F. App'x 581, 583 (Fed. Cir. 2007) (citing *District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973), for the proposition that "the Court of Federal Claims does not have jurisdiction over [plaintiff's] claims of civil rights violations under section[] 1983 . . . of Title 42; the general civil rights claims alleged are not based on any money-mandating provisions, and those statutes do not give rise to liability for the United States[]").

Second, Mr. Gulley's claim alleging that DOE was engaged in an "underhanded scheme" which caused Mr. Gulley "severe distress[,]" Compl. at 7, sounds in tort, and thus fall outside of the Tucker Act's express grant of this Court's jurisdiction. 28 U.S.C. § 1491(a)(1) ("*not* sounding in tort" (emphasis added)); *see U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1371–72 (Fed. Cir. 2013).

Third, Mr. Gulley's allegation that DOE or other individuals committed various crimes, such as pursuant to 18 U.S.C. § 242, similarly falls outside of this Court's subject-matter jurisdiction. *Sanders v. United States*, 252 F.3d 1329, 1335 (Fed. Cir. 2001) (quoting *Kania v. United States*, 650 F.2d 264, 268 (Cl. Ct. 1981), for the proposition that the "'function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to [the Court of Federal Claims]'").

Finally, Mr. Gulley's further requests for relief similarly fall outside of this Court's subject-matter jurisdiction. For example, punitive damages, *see* Compl. at 9, are "not available in this court." *Rig Masters, Inc. v. United States*, 42 Fed. Cl. 369, 373 (1998); *see Greene v. United States*, 65 Fed. Cl. 375, 379 (2005). Similarly, this Court also may not grant the injunctive relief that Mr. Gulley seeks, *see* Compl. at 8, as "the Court of Federal Claims has no power to grant affirmative non-monetary relief unless it is 'tied and subordinate to a money judgment[.]'" *Ute Indian Tribe of Uintah and Ouray Indian Reservation v. United States*, 145 Fed. Cl. 609, 632 n.17 (2019) (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998)).

---

[3] One potential exception to this rule is a claim for an illegal exaction. *E.g., Casa de Cambio Comdiv S.A. de C.V. v. United States,* 48 Fed. Cl. 137, 143-48 (2000) (holding "that this court has jurisdiction to consider whether the alleged violation of the regulations led to an illegal exaction violative of the Due Process Clause, despite the fact that clause does not contain compensation mandating language"), *aff'd,* 291 F.3d 1356, 1363 (Fed. Cir. 2002) ("[T]here is no jurisdiction under the Tucker Act over a Due Process claim *unless* it constitutes an illegal exaction." (emphasis added)). The Court addresses Mr. Gulley's possible illegal exaction claim, *infra.*

Accordingly, even if Mr. Gulley's Complaint were not moot, Counts 1-3 and Counts 5-7 of Mr. Gulley's Complaint fall outside of this Court's subject-matter jurisdiction, and hereby are **DISMISSED**, pursuant to RCFC 12(b)(1) and 12(h)(3).

**E.   Mr. Gulley's Takings Claim Falls Outside Of This Court's Subject-Matter Jurisdiction Or, Alternatively, Fails To State A Claim Upon Which Relief Can Be Granted As A Matter Of Law**

Although the government seeks dismissal of Mr. Gulley's putative takings claim pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted as a matter of law, *see* Def. Mot. at 1, the Court questions whether Mr. Gulley's Complaint contains sufficient non-conclusory, *factual* allegations so as to vest this Court with jurisdiction.  *Monzo v. United States*, 2013 WL 6235608, at *3 (Fed. Cl. Nov. 27, 2013) (holding that even if a complaint alleges the violation of "a statute or regulation [which] does mandate the payment of money[,]" in order "to trigger jurisdiction . . . plaintiff [must] show[] that he is within the class of plaintiffs entitled to recover under the money-mandating source") (quotations and citation omitted); *see Crow Creek Sioux Tribe*, 900 F.3d at 1354–55.  Notably, this Court and all "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see* RCFC 12(h)(3); *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010).

"It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction."  *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).  Thus, where a plaintiff "[1] allege[s] a taking [2] of their property [3] by the government" and is "within the class of plaintiffs entitled to recovery if a takings claim is established," the Court of Federal Claims has subject-matter jurisdiction over the plaintiff's takings claim.  525 F.3d at 1309.  On the other hand, a complaint that "fails to mention the Takings Clause or the Fifth Amendment at all" or that "fails to allege facts sufficient to establish responsibility of the United States for [the] acts" or that is founded upon the premise "'that the United States has taken unlawful action'" is insufficient to invoke this Court's jurisdiction.  *Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (quoting *Moody v. United States*, 931 F.3d 1136, 1142 (Fed. Cir. 2019)).

To be clear, Mr. Gulley cannot invoke this Court's subject-matter jurisdiction over his Complaint merely by employing the magic word "taking."  *See Barksdale v. United States*, 582 F. App'x 890, 892 (Fed. Cir. 2014) (per curiam) ("Despite the use of the word 'taking,' these are claims under the First and Fourteenth Amendment, which the Claims Court properly ruled [were] outside its jurisdiction.").  Thus, Mr. Gulley's repeated references throughout his Complaint to the government's "taking" of his SSDI payments, Compl. at 6-8, standing alone, do not vest this Court with jurisdiction.

Moreover, a plaintiff seeking compensation for a taking "'must concede the validity of the government action which is the basis of the . . . claim.'"  *Mahoney v. United States*, 129 Fed. Cl. 589, 593 (2016) (quoting *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993)); *see also Gahagan v. United States*, 72 Fed. Cl. 157, 161-62 (2006) (citing *Fla. Rock Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed. Cir. 1986), for the proposition that a plaintiff's insistence that the government's alleged taking was "unlawful . . . places the claim outside a takings context"); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1330 (Fed. Cir. 2006) (explaining that a "takings claim" pursuant to the Tucker Act is "separate from a challenge to the lawfulness of the government's conduct").  Here, Mr. Gulley clearly challenges the validity of the government's action in alleging that "defendants . . . unfairly, unjustly, [and] injuriously . . . are actually taking" his SSDI payments "for the purpose of cheating or defrauding plaintiff[.]" Compl. at 8.  As such, Mr. Gulley does not "concede the validity" of Treasury's offset, and thus Mr. Gulley's claim falls outside of this Court's jurisdiction and must be dismissed pursuant to RCFC 12(b)(1).  *Tabb Lakes*, 10 F.3d at 802; *see Milgroom v. United States*, 651 F. App'x 1001, 1005 (Fed. Cir. 2016) (explaining that, "[w]hile the Claims Court does possess jurisdiction to consider certain takings claims under the Fifth Amendment, it may only exercise that jurisdiction when the claimant 'concede[s] the validity of the government action'" (quoting *Tabb Lakes*, 10 F.3d at 802–03)); *Whiteford v. United States*, 148 Fed. Cl. 111, 120 n.3 (2020) (dismissing takings claims based upon alleged unlawful agency action for lack of subject-matter jurisdiction).  This Court also "has specifically held that a takings claim involving Social Security disability benefit payments does not fall within [our] jurisdiction[.]"  *Topping v. United States*, 2016 WL 3606059, at *7 (Fed. Cl. June 29, 2016); *see Brown v. United States*, 2014 WL 3686140, at *3 (Fed. Cl. July 16, 2014), *aff'd*, 607 F. App'x 983, 984 (Fed. Cir. 2015) (affirming this Court's decision to dismiss for lack of jurisdiction plaintiff's claim for the taking of his Social Security disability benefit payments).

In light of the above, and given the Court's duty to ensure that it possesses jurisdiction over any of Mr. Gulley's claims, the Court holds that even if his takings claim were not rendered moot, it still would be dismissed for lack of jurisdiction pursuant to RCFC 12(h)(3).

Admittedly, though, Mr. Gulley's putative takings claim presents a closer call as to whether Mr. Gulley's Complaint should be dismissed on RCFC 12(b)(1) grounds or pursuant to RCFC 12(b)(6) for the simple reason that this Court generally *does* possess jurisdiction over takings claims pursuant to the Tucker Act.  Thus, the Court considers whether Mr. Gulley's takings claim, should be dismissed, in the alternative, pursuant to RCFC 12(b)(6).  *Carter v. Homeward Residential, Inc.*, 794 F.3d 806, 808 (7th Cir. 2015).  In that regard, even if this Court had jurisdiction to consider Mr. Gulley's takings claim, the government is correct that Mr. Gulley's Complaint nevertheless must be dismissed pursuant to RCFC 12(b)(6).  Def. Mot. at 1.

To state a takings claim upon which relief can be granted, a plaintiff "must demonstrate . . . a property interest to assert and that the government physically or by regulation infringed on that interest[.]" *Craig Patty & Craig Thomas Expeditors, LLC v. United States*, 136 Fed. Cl. 211, 214 (2018). Once a plaintiff identifies a "legally recognized property interest[,]" *Freese v. United States*, 221 Ct. Cl. 963, 964–65 (1979), a plaintiff must also "identify an[] authorized government action that could have resulted in a taking[.]" *Topping*, 2016 WL 3606059, at *7 (citing RCFC 12(b)(6)). As such, the facts that Mr. Gulley presents in his Complaint, *i.e.*, that Treasury *improperly* "took" portions of his SSDI payments "do not give rise to a legal remedy." *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 954 (Fed. Cir. 2013); *see also Drury v. United States*, 52 Fed. Cl. 402, 404 (2002) ("None of [plaintiff's tort-based] allegations rise[] to the magnitude necessary to support a takings claim."). Accordingly, even if this Court possessed jurisdiction over Mr. Gulley's takings claim, and even had such claim not been rendered moot, the government is correct that Mr. Gulley's takings claim still must be, and hereby is, **DISMISSED** pursuant to RCFC 12(b)(6).

> **F.   Mr. Gulley's Illegal Exaction Claim, If Any, Falls Outside Of This Court's Subject-Matter Jurisdiction Or, Alternatively, Fails To State A Claim Upon Which Relief Can Be Granted As A Matter Of Law**

The government, in its motion, generously reads Mr. Gulley's takings claim as being "better characterized as a claim of illegal exaction." Def. Mot. at 13. Nevertheless, the "[d]etermination of [this Court's] jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). Thus, as explained *supra*, Mr. Gulley cannot invoke this Court's jurisdiction to adjudicate his grievances merely by invoking Tucker Act language, such as "taking" or "illegal exaction." In that regard, Mr. Gulley's generalized, conclusory allegations that the government acted in an improper manner when garnishing his SSDI payments are insufficient, without more, to allege a claim for an illegal exaction within this Court's jurisdiction. *Cf. Stephanatos v. United States*, 306 F. App'x 560, 564 (Fed. Cir. 2009) (noting that plaintiff's references in a footnote to his appellate brief to the terms "illegal exaction or wrongful exaction" were insufficient to allow the Federal Circuit to consider such claims because he had failed to sufficiently plead a claim for an illegal exaction in his original complaint (quotations omitted)). Accordingly, and as explained *infra*, even if Mr. Gulley's claims were not moot, the Court would dismiss Mr. Gulley's putative claim for an illegal exaction for lack of jurisdiction. In light of the Federal Circuit's recent decision in *Boeing Co. v. United States*, 968 F.3d 1371 (Fed. Cir. 2020), however, the Court addresses at greater length the government's arguments regarding Mr. Gulley's putative illegal exaction claim.

To allege an illegal exaction within this Court's subject-matter jurisdiction, a complaint must contain nonfrivolous *factual* allegations that the plaintiff is entitled to recover money for the government's purported illegal action. *See Harris v. United States*,

2014 WL 10936253, at *1 (Fed. Cl. Apr. 16, 2014) (dismissing illegal exaction claim for lack of subject-matter jurisdiction based on a finding that "there [was] no nonfrivolous illegal exaction claim in this suit"); *Reid v. United States*, 2020 WL 2764753, at *19 (Fed. Cl. May 8, 2020) (denying motion to dismiss illegal exaction claim based on alleged illegal actions of the Federal Housing Finance Agency ("FHFA"), and finding that plaintiffs' allegations "that the FHFA is unconstitutionally structured" and that it "violat[ed] . . . its own regulations" are "sufficient to establish . . . an illegal-exaction claim"). Nevertheless, unlike a takings claim, where a plaintiff must concede the validity or legality of an agency's action, an illegal exaction claim typically is premised, in contrast, upon "the absence of statutory authorization." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1578-79 (Fed. Cir. 1996); *see Reid*, 2020 WL 2764753, at *19 ("When the government expropriates property, a plaintiff can obtain relief under either a takings theory or an illegal-exaction theory, . . . but not both. . . . [A] takings claim requires lawful conduct, while an illegal-exaction claim is premised on unauthorized conduct." (internal citations omitted)).

Notably, as the undersigned recently observed, an illegal exaction claim need not be premised upon a money-mandating provision of law:

> In *Virgin Islands Port Auth. v. United States*, Senior Judge Bruggink described the "two classes of non-contractual [Tucker Act] claims" and held that a "[p]laintiff need not point to a money-mandating provision" to support the existence of an illegal-exaction claim "because the necessary remedy to the government improperly using its authority to place a citizen's money in its pocket is a return of that sum." 136 Fed. Cl. 7, 13-14 (2018), *aff'd*, 922 F.3d 1328 (Fed. Cir. 2019); *see also* 136 Fed. Cl. at 14 ("We see no further obligation under . . . illegal exaction claims[] for a plaintiff to point to anything in the statute or regulation on which the government relies that anticipates an abuse of the statute and authorizes the plaintiff to sue for return of the monies."). That is, "[a]n exaction claim provides an independent basis for jurisdiction and is a type of claim that the Tucker Act and the Little Tucker Act were designed to address." *Allegheny Techs. Inc. v. United States*, 144 Fed. Cl. 126, 136 (2019)[.]

*Perry*, 149 Fed. Cl. at 31. Accordingly, "a plaintiff need not identify a money-mandating provision of law to invoke this Court's jurisdiction for an illegal exaction claim." *Id.* at 32. The Federal Circuit reached that same conclusion in *Boeing*, 968 F.3d at 1383-84, thus "definitively resolv[ing] this issue," consistent with this Court's decision in *Perry*. 149 Fed. Cl. at 32.

In *Boeing*, plaintiff, The Boeing Company, alleged that the government forced it to pay $1,064,773 to cover various increased costs caused by changes "in direct violation of 41 U.S.C. § 1503(b), which requires that the Government may not recover costs greater than the aggregate increased cost to the Federal Government." 968 F.3d at 1383 (citation and quotations omitted). In other words, "Boeing alleged that the government [] demanded and [took] Boeing's money in violation of a statute." *Id.* Relying on *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005), the trial court had held that Boeing had to "show that 41 U.S.C. § 1503(b) is money-mandating to establish jurisdiction for its illegal exaction claim." *Boeing Co. v. United States*, 143 Fed. Cl. 298, 304 (2019) (holding that the Court of Federal Claims thus lacked jurisdiction over Boeing's illegal exaction claim), *rev'd and remanded,* 968 F.3d 1371 (Fed. Cir. 2020). The Federal Circuit reversed, holding as follows:

> The trial court read more into the *Norman* statement than is proper given the otherwise-clear law, from *Eastport S.S.* [*v. United States*, 178 Ct. Cl. 599, 605-06 (1967)] through *Testan* through later cases of this court, applying the requirement of a "money-mandating" statute only to claims for money damages for government action different from recovery of money paid over to the United States under an illegal exaction.

*Boeing*, 968 F.3d at 1383. To resolve any remaining ambiguity in the law, the Federal Circuit explained that "[w]e have, since *Norman*, assumed jurisdiction over statutory illegal exaction claims with no regard for whether the statutes were 'money-mandating[]' [and] we will not interpret *Norman* as having erased the distinction between the two types of claims." *Id.* at 1384. The fact that illegal exactions constitute a distinct type of claim which may be brought against the government pursuant to the Tucker Act is now the unambiguous law in this Court. *See, e.g., Sanford Health Plan v. United States*, 969 F.3d 1370, 1378 n.3 (Fed. Cir. 2020) (citing *Boeing* and referring to "the 'illegal exaction' branch of Tucker Act jurisdiction"); *see also Perry*, 149 Fed. Cl. at 25-36. Following *Boeing*, and in line with *Perry*, 149 Fed. Cl. at 31, the Court concludes that Mr. Gulley was not required to identify a money-mandating source of law to support his putative illegal exaction claim. The Court thus rejects the government's argument to the contrary. Def. Mot. at 13-14.

That said, for a plaintiff to plead an illegal exaction within this Court's subject-matter jurisdiction, a complaint must allege nonfrivolous *facts* demonstrating that the plaintiff is entitled to recover money for the government's purported illegal action. *Harris*, 2014 WL 10936253, at *1 (dismissing illegal exaction claim for lack of subject-matter jurisdiction based on a finding that "there [was] no nonfrivolous illegal exaction claim in this suit"). This means that although this Court may exercise jurisdiction over a putative illegal exaction claim "with no regard for whether the [asserted] statutes [are] 'money-mandating[,]'" *Boeing*, 968 F.3d at 1383, a plaintiff must still allege sufficient

facts to demonstrate that "money was taken by the government and [that] the exaction violated a provision of the Constitution, a statute, or a regulation[.]" *Piszel v. United States*, 121 Fed. Cl. 793, 801 (2015), *aff'd*, 833 F.3d 1366 (Fed. Cir. 2016). In other words, a plaintiff must "make a *non-frivolous* allegation that the government, in obtaining the money, has violated the Constitution, a statute, or a regulation." *Boeing*, 968 F.3d at 1383 (emphasis added).

By way of illustration, the Federal Circuit's decision in *Aerolineas Argentinas* shows what kinds of facts are typically needed to plead an illegal exaction claim within this Court's subject-matter jurisdiction. 77 F.3d at 1578. There, the Federal Circuit held that the Court of Federal Claims incorrectly dismissed plaintiff's illegal exaction claim. *Id*. Specifically, the Federal Circuit highlighted the manner in which the airline's complaint detailed *particular* factual assertions that were sufficient to support an illegal exaction claim within this Court's Tucker Act jurisdiction. *Id.* ("The Service improperly required the airlines to take custody, pending processing and decision of asylum petitions, of aliens who were in 'stowaway' status because they destroyed or concealed their travel documents."). The Federal Circuit further stressed that the airline's complaint relied upon *specific* sources of law in support of its illegal exaction claim. 77 F.3d at 1578 (highlighting that plaintiff specifically claimed that the government "misappli[ed] [] 8 C.F.R. § 235.3(d) to impose on the airlines the cost of long-term detention of excludable aliens, after repeal of [the Immigration and Nationality Act] § 233").

On the other hand, if a plaintiff does not even allege facts that could potentially support an illegal exaction claim within this Court's jurisdiction (*i.e.*, if a plaintiff does not even point to an alleged statute that was violated, or to money that was taken), this Court lacks jurisdiction to consider such a claim at all. *Harris* 2014 WL 10936253, at *1 n.4 ("Notwithstanding plaintiff's ambiguous statements regarding the presence of an illegal exaction claim in the complaint, the court must agree with defendant that there is no nonfrivolous illegal exaction claim in this suit.").

Mr. Gulley's Complaint appears to be far more analogous to the "ambiguous" complaint which this Court held falls outside of our subject-matter jurisdiction, *Harris* 2014 WL 10936253, at *1 n.4, rather than the claim at issue in *Aerolineas Argentinas* which was comprised of particularized factual allegations. While Mr. Gulley's Complaint likely fails to allege sufficient facts to plead an illegal exaction within this Court's subject-matter jurisdiction, the preferred approach, as explained *supra*, is to dismiss the claim on the merits pursuant to RCFC 12(b)(6). *See Carter*, 794 F.3d at 807; *see also Fireman v. United States*, 44 Fed. Cl. 528, 535 (1999) ("[This] Court should hesitate before

ruling that it lacks subject matter jurisdiction over a claim of illegal exaction").[4]  Thus, the government is correct that "even if the Court views Mr. Gulley's insufficiently alleged takings claim to be one of illegal exaction, such a claim should be dismissed for failure to state a claim[] [pursuant to] RCFC 12(b)(6)."  Def. Mot. at 14.

To assert a valid illegal exaction claim that will survive a motion to dismiss pursuant to RCFC 12(b)(6), a plaintiff's complaint "must show that:  (1) money was taken by the government and (2) the exaction violated a provision of the Constitution, a statute, or a regulation."  *Piszel* 121 Fed. Cl. at 801; *see Aerolineas Argentinas*, 77 F.3d at 1572 (emphasizing that for a plaintiff to properly plead an illegal exaction claim the plaintiff must seek "recovery of monies that the government has required to be paid *contrary to law*."(emphasis added)); *Casa de Cambio Comdiv S.A., de C.V.*, 291 F.3d at 1363 ("An illegal exaction . . . exists only if money has been 'improperly exacted or retained' by the government" (quoting *Testan*, 424 U.S. at 401)).  Mr. Gulley's putative illegal exaction claim does not meet this two-part illegal exaction pleading standard.

Indeed, in this case, the government retained Mr. Gulley's funds – thus satisfying the first prong of a proper illegal exaction claim.  But, as noted *supra*, Mr. Gulley does not identify in his Complaint a particular statute or other facts which demonstrate that the government held his money *contrary to law*.  Thus, Mr. Gulley has failed to plead an illegal exaction claim supported by the requisite factual allegations.  The mere fact that Mr. Gulley generally alleges that the government improperly retained his SSDI payments does not suffice for the purposes of surviving the government's RCFC 12(b)(6) motion to dismiss.  *See Perry*, 149 Fed. Cl. at 34 (citing *Virgin Islands Port Auth.* 922 F.3d at 1337, for the proposition that "a plaintiff cannot allege merely that he or she paid money to the government; rather, a plaintiff also must assert sufficient facts to demonstrate that such payment was made pursuant to a requirement that is contrary to law[.]" (quotations omitted)).

Accordingly, even if the Court possessed jurisdiction over Mr. Gulley's illegal exaction claim, he has failed to state such a claim as required by RCFC 12(b)(6), thus warranting dismissal of that claim on the merits.[5]

---

[4] *See, e.g., Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (noting that "as a general rule . . . when . . . [a] party is appearing pro se" courts should reach the merits); *cf. Armstrong v. Office of Pers. Mgmt.*, 314 F. App'x 269, 271 (Fed. Cir. 2008) (noting that the court will "construe [*pro se* plaintiff's*] pleadings liberally . . .  [to] reach the merits of her case[]").

[5] As noted, Mr. Gulley is a *pro se* litigant, and thus, as noted *supra*, his Complaint is entitled to a liberal construction.  Nevertheless, even after multiple careful reviews of his Complaint, the Court cannot identify specific factual allegations supporting his illegal exaction claim.  To the extent that any such facts *are* present in the Complaint, the Court emphasizes that, despite Mr. Gulley's *pro se* status, his "[a]rguments . . . are not fleshed out" and thus "are not preserved." *Stephanatos*, 306 F. App'x at 564.

<u>CONCLUSION</u>

For the foregoing reasons, the government's motion to dismiss hereby is **GRANTED** and Mr. Gulley's Complaint is **DISMISSED** pursuant to RCFC 12(b)(1) or, in the alternative, pursuant to RCFC 12(b)(6). No costs. The Clerk is directed to enter judgment accordingly.

It is so **ORDERED.**

*Matthew H. Solomson*

**Matthew H. Solomson**
**Judge**